***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The employee-employer relationship existed between the parties at all relevant times.
4. North Carolina School Boards Association was the carrier for defendant-employer at the time of the alleged incident. Key Risk Management is now handling this claim.
5. The date of the alleged incident was March 3, 2000.
6. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged accident, defendant-employer employing the requisite number of employees to be bound under the provisions of the Act.
7. Plaintiff's average weekly wage is $593.83, yielding a compensation rate of $397.24.
8. Plaintiff's alleged injuries include a bacterial scalp infection, allergic reaction to treatment and psychological disorder.
9. The issues for determination are:
a. Whether plaintiff sustained a disability as a result of the injury on March 3, 2000, and if so, to what benefits is she entitled?
b. What is the extent, if any, of plaintiff's disability?
c. Whether plaintiff is entitled to payment for past and/or future medical treatment?
10. The parties stipulated the following documentary evidence:
a. Stipulated Exhibit No. 1 consists of plaintiff's medical records.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 60 years old. Plaintiff began her employment with defendant in 1996. She was employed by defendant as a traveling English as a Second Language (ESL) teacher. Her duties included driving approximately 2000 miles per year to 19 different schools in southeastern North Carolina and teaching English to students ranging from kindergarten through grade 12. Plaintiff spent approximately two thirds of her time teaching and one third coordinating.
2. On March 3, 2000, plaintiff was working at the Fair Bluff Elementary School in Columbus County, North Carolina, when she interacted with a student who was infected with head lice.
3. On March 7, 2000, plaintiff presented to Calabash Medical Center with complaints of postnasal drip, a sore throat and significant pruritis of her scalp (itchy scalp). She was diagnosed with pharyngitis (throat inflammation), non-insulin dependent diabetes, allergic rhinitis (nasal inflammation) and lice. Plaintiff was prescribed Nix shampoo to treat the lice, and was given an out of work note to last until she was free of lice.
4. Plaintiff returned to Calabash Medical Center on March 13, 2000, with an allergic reaction to the Nix, but had no active lice at that time. She was prescribed Gtaraz for the allergic reaction.
5. On April 6, 2000, plaintiff was evaluated by Amy Ransom, a physician's assistant at GG Healthcare. Plaintiff was diagnosed with folliculitis to the scalp secondary to Nix, diabetes mellitus and hypertension. Plaintiff was prescribed Cipro, Allegra and Natural Tears shampoo. On May 11, 2000, P.A. Ransom wrote plaintiff out of work for "2-6 weeks due to multiple ongoing medical problems."
6. On May 16, 2000, Grand Strand Regional Medical Center pathology results reported that plaintiff suffered from "acute bacterial folliculitis."
7. Plaintiff's contract with defendant was year-to-year and expired in June 2000. On or about May 17, 2000, plaintiff was notified by defendant that her contract would not be renewed. During her employment with defendant, plaintiff never missed work due to stress or other problems, other than having the flu.
8. On June 13, 2000, plaintiff presented to Dr. Dennis J. Darcey at Duke University Medical Center. Dr. Darcey opined that plaintiff suffered an allergic reaction to Permethrin and developed acute bacterial folliculitis, which was treated with antibiotics. He further opined that the course of the illness and the multiple treatments took place over a period of two months. He diagnosed plaintiff with depression, stress, anxiety, hypertension and adult-onset diabetes mellitus.
9. On August 2, 2000, plaintiff presented to Dr. Julian N. Hayes of Strand Regional Specialty Associates with complaints of marked fatigue, pain, sensitivity and continued weakness. She also complained of continuing scalp discomfort described as pain in the vertex and on the left frontal and parietal regions. Plaintiff reported the pain as increasing with stress, and variable at other times. She described the condition to Dr. Hayes as a "very disagreeable sensation." Plaintiff also complained of some paresthesias and numbness involving both lower extremities and some tingling paresthesias above in her arms and shoulder. Dr. Hayes noted that plaintiff's family history was positive for adult onset diabetes and that plaintiff had allergies or sensitivities to approximately 37 medications. Dr. Hayes opined that plaintiff's neuropathy may be based on adult onset diabetes, and that her headache and paresthesias are associated with a mixed headache-type syndrome.
10. On August 8, 2000, plaintiff returned to Dr. Hayes with continued complaints of paresthesia involving distal extremities, some scalp pain and paresthesias, mild polyneuropathy and sleep disturbance. Dr. Hayes noted that while plaintiff was still bothered by the scalp discomfort, her primary complaints were of right hip and SI joint pain, and that the neuropathic discomfort was consistent with the history of diabetes. He prescribed Doxepin for the sleep disturbance with hopes that it would also help the scalp paresthesias and some of the neuropathic discomfort.
11. On August 15, 2000, plaintiff was evaluated by Dr. William M. Simpson of the Medical University of South Carolina in Charleston, to determine what, if any, side effects plaintiff might have experienced as a result of her exposure to Nix shampoo. Dr. Simpson examined plaintiff's scalp and found no inflammation and minimal scaling with normal healing. He also found no infection or infestation, no excoriation, lichenification or evidence of persistent trauma. He opined that plaintiff's symptoms might be the result of pyrethroid sensitivity, which should improve with time. He further noted that pharmakokinetics of the active ingredient indicate a brief course in the body and minimal likelihood of prolonged effect in any body system.
12. In a letter dated August 25, 2000, Dr. Simpson again opined that any likelihood that an application of a shampoo containing permethrin could cause persistent dermatologic problems and systemic manifestations is time limited. He noted that a small portion of the population is sensitive to permethrin and other pyrethroids, but this is primarily limited to respiratory symptoms upon re-exposure. He also noted that anxiety and stress might exacerbate many conditions, including hypertension and diabetes.
13. On September 6, 2000, defendant filed a Form 28 Return to Work form with the Industrial Commission. On September 8, 2000, defendant filed a Form 60 accepting plaintiff's claim as compensable and agreeing to pay temporary total disability compensation commencing on April 13, 2000.
14. On September 25, 2000, plaintiff presented to Dr. Renee Lamm of Strand Psychiatric Associates. Dr. Lamm took a history in which plaintiff noted several stressors in her life including: (1) a series of demoralizing and demeaning changes in her job which led to her resigning; (2) concern that her treating physicians had misdiagnosed her condition and failed to note a stroke that she believed had occurred; (3) sleeping no more than five hours at a time and waking tired and fearful; (4) fear of being destitute; (5) fear of recurrent allergies; (6) fear of health care professionals who are unwilling to consider alternative therapies that plaintiff wishes to pursue; (7) exposure to snakes, insects and vermin; (8) her husband's disability; (9) a death in her family; and (10) a pending law suit resulting from a motor vehicle accident.
15. Following a mental exam, Dr. Lamm noted that plaintiff had a marked preoccupation with illnesses, misdiagnoses, possible sequela and fears of medicine. Dr. Lamm opined that until plaintiff obtained a single primary care physician and stabilized her medical conditions of diabetes mellitus, her thyroid status and her allergies, plaintiff was not a good candidate for antidepressant therapy or sleep stabilization.
16. Plaintiff continued to treat with Dr. Lamm. On February 26, 2001, Dr. Lamm noted that plaintiff was not compliant with diet, exercise or other recommendations. Plaintiff continued to be stressed over an impending court date for an auto accident, her workers' compensation case and her husband's illness. She was not taking prescribed medication. Plaintiff complained of continuing feelings of hopelessness, anhedonia, sleep disturbance, intractable pain in her legs, burning and numbing consistent with neuropathy and generalized pain.
17. During subsequent visits, Dr. Lamm noted that plaintiff's status remained unchanged due to her unwillingness to take medication. Plaintiff's blood sugars fluctuated, worsening her neuropathy and pain. In August 2001, Dr. Lamm noted increasing problems with plaintiff's husband, including suicidal ideations, and manipulative, controlling behavior. Plaintiff failed to improve, and in October 2001 Dr. Lamm opined that the reason was uncontrolled diabetes mellitus and sequela, along with plaintiff's compliance issues.
18. During the next year, plaintiff experienced additional stressors, including the deaths of two close friends and an additional motor vehicle accident wherein she lost consciousness and suffered lacerations and a neck injury.
19. In Dr. Lamm's final note of March 4, 2003, she stated that plaintiff had recently been placed on insulin and was beginning to look at some limited exercise such as walking. Plaintiff still reported some intermittent depression.
20. There is medical evidence which shows that plaintiff is currently disabled as a result of her depression and other conditions.
21. There is no medical evidence that relates plaintiff's current depression and other conditions to the contracting of head lice in March 2000 or the subsequent allergic reaction plaintiff had to Nix shampoo. The medical evidence tends to show that plaintiff's scalp condition was essentially resolved within two months following treatment. There is evidence of a significant number of other non-work related stressors, which are responsible for plaintiff's depression and disability from work.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident on March 3, 2000, which arose out of and in the course of the employment when she contracted head lice from a student. In addition, the treatment of plaintiff's condition caused an allergic reaction which resulted in her disability from work beginning on March 3, 2000 and continuing through June 13, 2000, when she was examined by Dr. Darcey and her scalp condition was deemed resolved. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $397.24 per week for the period from on March 3, 2000 through June 13, 2000. N.C. Gen. Stat. § 97-29.
3. There is no medical evidence that relates plaintiff's current depression and other conditions to the contracting of head lice in March 2000 or the subsequent allergic reaction plaintiff had to Nix shampoo. There is evidence of a significant number of other non-work related stressors, which are responsible for plaintiff's depression and continuing disability from work. Accordingly, plaintiff is not eligible for further disability compensation after June 13, 2000. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury until and including the treatment provided by Dr. Darcey. N.C. Gen. Stat. §97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $397.24 per week for the period from March 3, 2000 through June 13, 2000. As much of said compensation as has accrued shall be paid in a lump sum, and defendant shall be entitled to a credit for any compensation already paid for this period.
2. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
3. Defendant shall pay medical expenses incurred or to be incurred which are related to plaintiff's compensable scalp condition when bills for the same have been approved, in accordance with the provisions of the Act.
4. Defendant shall pay the costs.
 ***********
This the 2nd day of February 2005
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DCS/mb